Maurice B. VerStandig, Esq.
Bar No. MD18071
THE BELMONT FIRM
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Enovational Corp.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-55-ELG |
| | ) | (Chapter 11) |
| ENOVATIONAL CORP. | ) | |
| | ) | |
| Debtor. | ) | |

## FIRST AMENDED ENOVATIONAL CORP. PLAN OF
## REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

Comes now Enovational Corp. ("Enovational" or the "Debtor"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provides the following amended plan of reorganization (the "Plan") herein:

### Background for Cases Filed Under Subchapter V

**a.  Description and History of the Debtor's Business**

Enovational is a corporation formed pursuant to the laws of the District of Columbia on June 10, 2011. At the time of formation, and at all times since, the sole stockholder of the Debtor has been Vlad Enache. Initially an entity merely utilized to manage the activities of one or two individuals, Enovational saw a marked expansion in its operational footprint during the latter half of the 2010s when it acquired an increasing volume of government contracting business, first as a subcontractor and then as a prime contractor.

Operationally, Enovational is a data-driven technology company focused on web and app-based development. Headquartered in Washington, DC, the Debtor works with various third parties – most of whom are state actors – to provide technology solutions. During the COVID-19 pandemic, these efforts have been highlighted by the Debtor's development, provision, and maintenance of contact tracing services and vaccine registration services for the State of Maryland, with Enovational also providing a broad array of other data-driven services for the Old Line State.

With the increase in Enovational's operations came, too, an increase in Enovational's human resources footprint. The company rapidly grew from merely being a legal entity managing the work of one or two individuals to, at its peak, employing more than 130 people. The broad

1

employee base serviced Enovational's clients while also providing an internal structure and framework befitting a company on the larger end of the small business spectrum.

A series of anomalous constructs, however, left Enovational unable to pay its debts as they came due, in March 2022. Amongst the chief contributing factors to the Debtor's insolvency was the absence of a contractual framework for its work handling the State of Maryland's vaccination registration system. Enovational both built and rolled out the highly-successful platform (a platform that was, in turn, touted by government leaders and that garnered recognition as a preeminent exemplar during a torrent of failures in the systems developed by other states). Enovational undertook this work, however, without a written contract, statement of work, or work order in place, believing the State of Maryland would pay for the services in light of the public health emergency being addressed.

When it became apparent various efforts would be required to secure payment for these expensive and labor-intensive services, and when other efforts of Enovational were either not timely paid or, in some circumstances, not timely invoiced due to various internal issues, Enovational encountered a cash flow shortfall. This led Enovational to file a petition for relief herein on March 26, 2022, just hours before the expiration of certain statutory definitional provisions permitting Enovational to reorganize under Subchapter V of Title 11 of the United States Code.

On the first business day following its filing of a petition for relief, Enovational undertook a strategic workforce reduction, separating approximately one third of its then-extant staff. In short order, Enovational also received leave of court to reject a particularly-expensive office space lease to which it had been previously bound, and commenced negotiations with various competitive industry actors concerning a potential acquisition of certain key assets of the Debtor.

With a reduced payroll, Enovational has used its time as a debtor-in-possession to streamline various operations and maximize the efficiency of its operations. The Debtor has also worked through counsel to collect certain accounts receivable, address various operational obstacles, and strategically assess various reorganizational options.

With the aid of the bankruptcy process, the Debtor now faces two potential paths forward. First, the Debtor can continue to work on the lucrative government contracts it has procured, collect revenues unhindered by an outsized payroll and the prospect of a notably-expensive office lease, and continue as a going concern. Or, second, the Debtor can strategically liquidate through the bankruptcy process, selling the majority of its assets to a third party (or any person/entity that may tender a higher and better offer) and working through this Honorable Court to collect on more than $15 million in accounts receivable.

As noted *passim*, Enovational currently intends to pursue the latter path to reorganization, focusing on a liquidation that will pay all creditors in full. This is, however, contingent upon the finalization of an asset purchase agreement that is being negotiated as of the filing of this Plan (with the negotiations having reached the point of advanced drafts being turned multiple times). Should such sale not ultimately come to fruition for any reason, Enovational is prepared to negotiate an analogous deal with a third party; multiple qualified government contracting actors have executed non-disclosure agreements and commenced undertaking due diligence on

Enovational's assets and there accordingly exists a qualified belief that a deal may be negotiated with one such other actor (subject to higher and better offers) if the agreement currently nearing completion were to encounter any unforeseen and insurmountable obstacles.

Procedurally, it bears notation throughout this case, Enovational has worked closely with its appointed Subchapter V trustee, Marc Albert (the "Trustee"). The Debtor has agreed to pay the Trustee a weekly retainer, which has been approved by the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"), and such payments have been made on a regular and habitual basis at all times since.

Procedural attention is also warranted in connection with a pending objection, filed by the Office of the United States Trustee (the "UST"), challenging Enovational's eligibility to proceed as a Subchapter V debtor. While no creditor in this case elected to challenge the Debtor's eligibility, the UST enjoys standing to bring such a challenge and has done so. Enovational is confident it will prevail on the objection and, perhaps more pertinently, Enovational is equally confident this Plan would merit confirmation even by "traditional" Chapter 11 standards (notwithstanding this Plan being drafted in accord with the mandate of a form expressly reserved for small business cases). However, a revocation of the designation would significantly increase the administrative expenses of this case, inasmuch as (i) legal fees would grow palpably greater (both for the Debtor and other interested parties); and (ii) the UST would become entitled to collect significant quarterly fees. Accordingly, if the designation is revoked, this Plan will need to be amended to account for increased administrative expenses of approximately $250,000.00 to $400,000.00 in legal fees and quarterly expenses.

## b. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit 1.

## c. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor is providing projected financial information as Exhibit 2.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code), remaining after the payment of administrative expenses addressed in § 3.02 below, for the period in § 1191(c)(2), of a sum well in excess of that needed to pay all claims herein.

It bears notation the payments contemplated in the projections are premised upon the assumption the Debtor will succeed in every single claim objection it has filed and plans to file, and that such success will lead to various claims being reduced to $0.00. While the Debtor has

every confidence in the arguments it is – and will be – advancing, this is *not* a realistic expectation and is not an assumption upon which reliance should be placed by any party in interest.[1]

Similarly, note should be made that the timeframes for collection of certain monies are all either approximate or wholly speculative. In particular, but without limitation, the collection of funds due and owing for work in progress is spread over several months, in a somewhat capricious manner. This is a good faith but enormously speculative guess as to when monies might be paid pursuant to (i) an arrangement that still needs to be finalized and (ii) terms that are subject to change.

The final plan payment is expected to be paid on December 30, 2024.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1.    Summary

This Plan of Reorganization (the "Plan") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of Enovational from the general cash flow of the Debtor.

The Plan provides for:        2 classes of priority claims;

2 classes of secured claims;

3 classes of non-priority unsecured claims; and

1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. The Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

---

[1] The projections also contemplate how much money may be collected from accounts receivable and when such money may be collected. These projections are conservative as to both sum and temporal duration, and most certainly ought not be construed as a discount on the sum sought or an acknowledgment of any portion of accounts receivable not being properly collectible.

**Article 2.**      **Classification of Claims and Interests**

| | | |
|---|---|---|
| **Section 2.01** | **Class 1** | All priority tax claims under § 507(a)(8) of the Bankruptcy Code. |
| **Section 2.02** | **Class 2** | All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)), being chiefly comprised of wage claims. |
| **Section 2.03** | **Class 3** | The secured claim of BMW Financial Services. |
| **Section 2.04** | **Class 4** | The secured claim of Wells Fargo Bank, N.A. |
| **Section 2.05** | **Class 5** | The lease rejection claim of TMG 1400 L Street, L.L.C. |
| **Section 2.06** | **Class 6** | All other non-priority unsecured claims allowed under § 502 of the Bankruptcy Code. |
| **Section 2.07** | **Class 7** | The State of Maryland |
| **Section 2.08** | **Class 8** | Equity interests of the Debtor. |
| **Section 2.09** | **Class Identification** | A schedule of each class and its constituent creditors is appended hereto as Exhibit 3. |

**Article 3.**      **Treatment of Administrative Expense Claims and Court Fees**

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| **Section 3.03** | **Priority Tax Claims** | Each holder of a priority tax claim will be paid in full on the effective date of this Plan. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

**Article 4.** **Treatment of Claims and Interests Under the Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority tax claims | Unimpaired | The Debtor estimates a total of $17,093.36 in priority tax claims, being comprised of claims already filed and claims scheduled by the Debtor. These claims will be paid, in full, on the Effective Date. |
| Class 2 – Allowed priority claims | Unimpaired | All allowed priority claims, being comprised chiefly of wage claims from former and current employees, will be paid, in full, on the Effective Date. The Debtor has objected to some such claims and will be objecting to others; each such disputed claim will be governed by the provisions of Section 5.02 hereof. |
| Class 3 - The secured claim of BMW Financial Services | Unimpaired | The secured claim of BMW Financial Services will be paid, in full, by Vlad Enache, in his individual capacity, not later than the date on which a confirmation hearing is held on this Plan. Should Vlad Enache not pay this claim in full, the Debtor will pay this claim in full on the Effective Date and undertake to recover the sum paid from Vlad Enache through such legal means as may be available under the various allowances of the Bankruptcy Code. |
| Class 4 – The secured claim of Wells Fargo Bank, N.A. | Impaired | It is reasonably anticipated this claim will be amended or withdrawn before confirmation of this Plan, with the claimant having been afforded relief from the automatic stay to setoff collateral being held as security for this claim. Should the claim not be withdrawn in full, any deficiency will be paid, in full, not later than 180 calendar days after the Effective Date. |

| | | |
|---|---|---|
| Claim 5 - The lease rejection claim of TMG 1400 L Street, L.L.C. | Impaired | This claim is disputed and shall be governed by the allowances of Section 5.02 hereof. It is expected a portion of this claim may be allowed, and such will be paid, in full, not later than December 30, 2024 unless later payment is a condition of allowance. |
| Class 6 – All other non-priority unsecured claims allowed under § 502 of the Bankruptcy Code, excepting the claim of the State of Maryland | Impaired | All allowed unsecured claims will be paid, in full, not later than December 30, 2024. The Debtor will be has objected to certain such claims and intends to object to others; each such disputed claim will be governed by the provisions of Section 5.02 hereof. |
| Class 7 – The non-priority unsecured claim of the State of Maryland | Impaired | This claim is disputed and shall be governed by the allowances of Section 5.02 hereof. Inasmuch as this claim is expressly stated as a claim for setoff, it is reasonably anticipated no monies will be paid on this claim and, to the contrary, any allowed portion of the claim will be merely setoff against the State of Maryland's obligations to Enovational. |
| Class 8 - Equity interests of the Debtor. | Unimpaired (insider) | Vlad Enache shall retain a 100% interest in the Debtor. To the extent any monies are available for distribution after payment of all allowed claims herein (and it is reasonably anticipated such monies will be available for distribution), such funds will be paid over to Vlad Enache directly without the formality of the Debtor paying the same as dividends, in light of the liquidating nature of this Plan. |

**Article 5.**       **Allowance and Disallowance of Claims**

**Section 5.01  Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02   Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**Section 5.03   Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

**Article 6.      Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01   Assumption**

The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date of this Plan, to the extent such contracts and leases do not contemplate the provision of work that has already been completed and for which payment has been tendered in full:

| Contracting/Leasing Party | Designation(s) on Amended Schedule G (DE #88) |
|---|---|
| Carahsoft Technology Corp.<br>11493 Sunset Hills Road<br>Suite 100<br>Reston, VA 20190 | 2.2 |
| My Guys Moving & Storage, Inc.<br>Commercial Division<br>45180 Global Plaza<br>#125<br>Sterling, VA 20166 | 2.9 |
| State of Delaware<br>Attn: Lisa Bond<br>Main Administration Building, Third Floor<br>1901 N. Du Pont Highway, Main Bldg.<br>New Castle, DE 19720 | 2.12 |
| State of Maryland<br>Department of Information Technology<br>100 Community Place<br>Crownsville, MD 21032-2022 | 2.13-2.19, 2.22-2.26 |
| State of Maryland<br>Department of Health<br>201 W. Preston Street<br>Attn: Feyella Toney, Contract Manager<br>Baltimore, MD 21201-2399 | 2.20 |
| State of Maryland | 2.21 |

| | |
|---|---|
| Medical Cannabis Commission<br>849 International Drive<br>4th Floor<br>Linthicum Heights, MD 21090 | |
| West Virginia Higher Education Policy Co.<br>1018 Kanawha Boulevard, E<br>Charleston, WV 25301 | 2.28 |

**Section 6.02    Assumption and Assignment**

The Debtor assumes the following executory contract, as of the effective date of this Plan, and assigns the same to Vlad Enache:

| Contracting/Leasing Party | Designation(s) on Amended Schedule G (DE #88) |
|---|---|
| International Motorcars, Inc.<br>d/b/a Passport BMW<br>5050 Auth Way<br>Suitland, MD 20746 | 2.6 |

**Section 6.03    Caveated Rejection**

The Debtor rejects all executory contracts and unexpired leases not expressly listed in Sections 6.01 and/or 6.02 hereof, *except* the Debtor assumes any executory contract under which the Debtor is (or was) to provide services to a governmental actor notwithstanding any failure to schedule such contract previously in this case or any failure to specifically schedule or list such contract herein.

**Article 7.    Means for Implementation of the Plan**

**Section 7.01    Sale Pursuant to Section 363 of the Bankruptcy Code**

As of the filing of this Plan, the Debtor is in advanced stage negotiations with a third party ("Company X") to enter into an asset purchase agreement (the "APA") under which Company X will acquire substantially all assets of the Debtor, saving and excepting certain accounts receivable, for a sum in excess of $11 million. As soon as practicable, the Debtor will file herein a motion to approve the APA, subject to higher and better offers, together with a motion to establish bidding procedures.

The APA, if executed will fetch a gross recovery of at least $11.2 million, with at least $9.7 million becoming available after closing and before the close of the third fiscal quarter of 2022, and an additional $1.5 million being held in escrow for one year after closing to provide security for any indemnification claims under the APA.

Upon closing of the APA, the Debtor will discharge the majority of its workforce, with most such individuals joining Company X on a new employment basis. The Debtor will retain a small administrative workforce requisite to carry out activities in connection with this bankruptcy case and the orderly wind-up of the Debtor's affairs. It is reasonably anticipated the retained staff will invite a payroll obligation of less than 10% of that currently borne by the Debtor, and the retained staff will separate on an individual-by-individual basis as the need for such employees is overcome by the progress of Enovational's liquidation efforts.

## Section 7.02    Collection of Accounts Receivable

As of the filing of this Plan, it is the Debtor's position that the State of Maryland owes Enovational a sum in excess of $17 million in connection with various accounts receivable correlative to open and/or overdue invoices submitted to the State of Maryland. The Debtor is in the process of invoicing additional work and will continue to issue regular invoices as part of its operations as a debtor-in-possession.

During this bankruptcy, the Debtor has worked with the State of Maryland, through counsel, to resolve and collect several million dollars in accounts receivable. Enovational will continue to pursue a cooperative approach to collections activities, petitioning for leave to approve any compromise should the need so arise. It is reasonably hoped such efforts will fetch a final collection of these monies due and owing.

Enovational will also be shortly filing an application to employ Douglas F. Gansler, Esq., the former Attorney General of the State of Maryland, as special counsel to advise and consult with the Debtor in connection with ongoing negotiations and collection activities. There is a good faith belief doing so will advance the realities underlying the Debtor's reasonable hope of a final collection being fetched without the occurrence of litigation.

Should accounts receivable not prove collectible through collaborative means, however, the Debtor has authorized its general reorganization counsel to file an adversary proceeding, as part of this bankruptcy case, to collect such monies as may be due and owing to the Debtor. Should such a proceeding be brought, it is reasonably anticipated the ensuing litigation would be both lengthy and complex, especially in light of more than $7.7 million in accounts receivable being correlative to work on a vaccine registration and rollout program the Debtor orchestrated at the express request of the State of Maryland but without a work order, statement of work, or other governing contract. As such, the final distribution date for various obligations set forth in this Plan is fixed at December 30, 2024, recognizing there may be a need for protracted litigation (and, potentially, equally-protracted appellate litigation) before the whole of the monies contemplated hereunder may be collected.

## Section 7.03    Liquidation

This is a liquidating plan of reorganization. It is reasonably anticipated that, following the making of final payments hereunder, the Debtor will file articles of dissolution with the District of Columbia.

**Article 8.      General Provisions**

**Section 8.01    Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

**Section 8.02    Effective Date.** The effective date of this Plan is the first business day following the date this is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Section 8.03    Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04    Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

**Section 8.05    Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Section 8.06    Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the District of Columbia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.07    Corporate Governance.** For the duration of this Plan, the Debtor shall be prohibited from issuing nonvoting equity securities and the singular equity holder of the Debtor shall be prohibited from selling, transferring, diluting, alienating, or otherwise altering such interest without leave of this Honorable Court.

**Section 8.08    Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Columbia shall retain jurisdiction to hear all matters arising from or related to this Plan, as well as all matters arising from or related to any agreements ratified or orders entered in connection with the Debtor's bankruptcy case. Any such matter commenced in any court of any state may be removed, by any party in interest, to the United States Bankruptcy Court for the District of Columbia.

**Article 9.      Discharge**

**Section 9.01    Discharge Pursuant to § 1191(a).** If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6) of the Bankruptcy Code.

**Section 9.02    Discharge Pursuant to § 1191(b).** If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code.

**Section 9.03    Effect of Discharge.** This discharge will be effective against all creditors of the Debtor given notice of this bankruptcy case and sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, and directors.

**Article 10.      Retention of Certain Assets; Stay; Disbursing Agent**

**Section 10.01** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, the Debtor's accounts receivable shall remain an asset of the Debtor's bankruptcy estate – and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code – to and through December 30, 2024, at which time said interest (should any remain) shall revest in the Debtor.

**Section 10.02** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, all intellectual property assets of the Debtor receivable shall remain an asset of the Debtor's bankruptcy estate – and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code – to and through December 30, 2024, at which time said interest (should any remain) shall revest in the Debtor.

**Section 10.03** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, all litigation rights, claims, entitlements in equity, and entitlements in law, of the Debtor against the State of Maryland and/or any political subdivision thereof shall remain an asset of the Debtor's bankruptcy estate – and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code – to and through December 30, 2024, at which time said interest (should any remain) shall revest in the Debtor.

**Section 10.04** The Subchapter V Trustee shall continue in his service to and through December 30, 2024. In addition to performing all duties traditionally attendant to such a trusteeship, the Subchapter V Trustee shall also act as a disbursing agent for all payments due and owing pursuant to this Plan.

**[SIGNATURES ON FOLLOWING PAGE]**

Respectfully Submitted,


/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
THE BELMONT FIRM
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Enovational Corp.*

Exhibit 1

Maurice B. VerStandig, Esq.
Bar No. MD18071
THE BELMONT FIRM
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Enovational Corp.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-55-ELG |
| | ) | (Chapter 11) |
| ENOVATIONAL CORP. | ) | |
| | ) | |
| Debtor. | ) | |

## ENOVATIONAL CORP. LIQUIDATION ANALYSIS

Come now Enovational Corp. ("Enovational" or the "Debtor"), by and through undersigned counsel, and provides the following liquidation analysis in support of Enovational's plan of reorganization (the "Plan") to which this analysis is annexed:

### I.    Assets

The assets of Enovational consist, macroscopically, of (i) accounts receivable, bearing a face value of just over $17 million; (ii) unbilled work in progress, which is difficult to value for various technical reasons but which is believed to be in the general range of $2 million to $3 million; and (iii) operational assets comprised of a proprietary platform, coding, the ongoing use of a well-curated workforce, and several government contracts, that are collectively believed to be worth at least $11 million. Enovational also has certain computer and office equipment assets of a *de minimis* value and intellectual property that is subsumed within the third of the foregoing enumerated categories.

### II.    Projected Plan Proceeds

The Plan contemplates Enovational will (i) collect accounts receivable from the State of Maryland, through negotiations and, if need-be, litigation; (ii) invoice and collect work in progress, also through negotiation and, if need-be, litigation; and (iii) enter into an agreement to sell substantially all other assets of the Debtor for a sum in excess of $11 million, subject to higher and better offers.

There are inherent risks in predicting sums to be realized through negotiated payments, with such being a notably speculative endeavor. Additionally, for self-evident reasons, Enovational is not going to publish on this docket any details concerning its negotiation/litigation

1

strategy, much less the lowest sum it would accept in satisfaction of receivables and work in progress. Enovational does reasonably project, however, that the proceeds of its accounts receivable will be more than sufficient – coupled with sale proceeds – to pay all creditors in full.

### III.    Projected Chapter 7 Liquidation Proceeds

A Chapter 7 proceeding would be conceptually comparable to the liquidation set forth in the Plan but would fetch substantially less money for creditors and equity holders. While a learned and seasoned Chapter 7 trustee would no doubt set about selling assets at the highest value that can be obtained in a proverbial "fire sale" context, a Chapter 7 estate would be burdened by (i) the inability of Enovational to continue to operate in a manner that permits the finalization of work in progress and the invoicing of such upon completion; (ii) potential loss of contractual rights upon an abrupt cessation of ongoing operations; (iii) the commission due to a Chapter 7 trustee; (iv) the significant legal fees likely to be incurred by a Chapter 7 trustee; and (v) the significant fees the estate would incur in contesting any effort to convert this matter to one under Chapter 7.

While it is acknowledged there are narrow circumstances under which a Chapter 7 debtor may continue operations, a conversion of this case would no doubt invite the sort of mass personnel resignation Enovational has been able to delicately and artfully avoid since filing its petition for relief. This would not only inhibit the ability of the Debtor to finish work in progress (which is a condition requisite to payment under various contractual obligations) but, too, would invite concerns about the quality of any completed work and whether or not the same would be subject to challenge.

Further, a wholesale cessation of work – due to a staffing shortage or otherwise – would very likely invite one or more contractual partners to terminate correlative work orders. This would not only limit the estate's ability to collect work in progress through a Chapter 7 proceeding but, too, would significantly hamper a trustee's ability to sell the assets of Enovational for a price anywhere near the more than $11 million to be realized under the Plan.

Conversion would also lead to the incursion of Chapter 7 trustee's fees. While the Subchapter V trustee would no longer charge for work (saving the estate money on a forward-looking basis), a Chapter 7 trustee's commission would likely be calculated somewhere between $450,000.00 and $650,000.00 – a sum well in excess of that to which a Subchapter V trustee would become entitled if the Plan is confirmed. A Chapter 7 trustee would also almost assuredly have to engage counsel, likely inviting attorneys' fees of between $100,000.00 and $300,000.00, with part of those fees being incurred gaining familiarity with the case and thusly being redundant to fees already incurred by the estate through its use of general reorganization counsel.

Finally, it bears notation the Debtor would contest – vigorously – any effort to convert this case to Chapter 7. Such a contest would, unto itself, be prone to invite close to $100,000.00 in additional legal fees that, in turn, would become an administrative obligation of the estate. The number may prove significantly higher if appellate review where then sought by any party in interest.

Accordingly, Enovational conservatively estimates that a Chapter 7 liquidation would fetch approximately $10 million to $15 million in gross proceeds, of which at least $500,000.00 would not be available for distribution to creditors.

Exhibit 2

| | September 2022 | October 2022 | November 2022 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $9,700,000.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Credits** | $9,700,000.00 | $0.00 | $0.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $50,000.00 | $40,000.00 | $30,000.00 |
| **Subchapter V Trustee Fees** | $65,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $17,093.36 | $0.00 | $0.00 |
| **Class 2** | $166,202.20 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $7,707,702.99 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $383,447.67 | $30,000.00 | $10,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $8,389,446.22 | $71,000.00 | $41,000.00 |
| | | | |
| **Beginning Balance** | $1,000,000.00 | $2,310,553.78 | $2,239,553.78 |
| **Ending Balance** | $2,310,553.78 | $2,239,553.78 | $2,198,553.78 |

|  | December 2022 | January 2023 | January 2023 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $2,000,000.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $2,000,000.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $30,000.00 | $30,000.00 | $30,000.00 |
| **Subchapter V Trustee Fees** | $1,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $10,000.00 | $10,000.00 | $10,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $41,000.00 | $41,000.00 | $41,000.00 |
| | | | |
| **Beginning Balance** | $2,198,553.78 | $2,157,553.78 | $2,116,553.78 |
| **Ending Balance** | $2,157,553.78 | $2,116,553.78 | $4,075,553.78 |

| | March 2023 | April 2023 | May 2023 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $500,000.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $500,000.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $30,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $1,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $10,000.00 | $10,000.00 | $10,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $41,000.00 | $31,000.00 | $31,000.00 |
| | | | |
| **Beginning Balance** | $4,075,553.78 | $4,034,553.78 | $4,003,553.78 |
| **Ending Balance** | $4,034,553.78 | $4,003,553.78 | $4,472,553.78 |

| | June 2023 | July 2023 | August 2023 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $500,000.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $500,000.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $20,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $1,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $10,000.00 | $10,000.00 | $10,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $31,000.00 | $31,000.00 | $31,000.00 |
| | | | |
| **Beginning Balance** | $4,472,553.78 | $4,441,553.78 | $4,410,553.78 |
| **Ending Balance** | $4,441,553.78 | $4,410,553.78 | $4,879,553.78 |

| | August 2023 | October 2023 | November 2023 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $1,500,000.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $250,000.00 |
| | | | |
| **Total Credits** | $1,500,000.00 | $0.00 | $250,000.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $20,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $85,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $85,000.00 | $5,000.00 | $5,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $190,000.00 | $26,000.00 | $26,000.00 |
| | | | |
| **Beginning Balance** | $4,879,553.78 | $6,189,553.78 | $6,163,553.78 |
| **Ending Balance** | $6,189,553.78 | $6,163,553.78 | $6,387,553.78 |

|  | December 2023 | January 2024 | January 2024 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $0.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $20,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $1,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $5,000.00 | $5,000.00 | $5,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $26,000.00 | $26,000.00 | $26,000.00 |
| | | | |
| **Beginning Balance** | $6,387,553.78 | $6,361,553.78 | $6,335,553.78 |
| **Ending Balance** | $6,361,553.78 | $6,335,553.78 | $6,309,553.78 |

|  | March 2024 | April 2024 | May 2024 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $0.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $20,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $20,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $5,000.00 | $5,000.00 | $5,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $45,000.00 | $26,000.00 | $26,000.00 |
| | | | |
| **Beginning Balance** | $6,309,553.78 | $6,264,553.78 | $6,238,553.78 |
| **Ending Balance** | $6,264,553.78 | $6,238,553.78 | $6,212,553.78 |

|  | June 2024 | July 2024 | August 2024 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $0.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $20,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $1,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $5,000.00 | $5,000.00 | $5,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $26,000.00 | $26,000.00 | $26,000.00 |
| | | | |
| **Beginning Balance** | $6,212,553.78 | $6,186,553.78 | $6,160,553.78 |
| **Ending Balance** | $6,186,553.78 | $6,160,553.78 | $6,134,553.78 |

| | September 2024 | October 2024 | October 2024 |
|---|---|---|---|
| **REVENUE** | | | |
| **Proceeds of Asset Sale** | $0.00 | $0.00 | $0.00 |
| **Collection of Accounts Receivable** | $0.00 | $0.00 | $0.00 |
| **Collection of Work in Progress** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Credits** | $0.00 | $0.00 | $0.00 |
| | | | |
| **DISTRBUTIONS** | | | |
| **Payroll** | $20,000.00 | $20,000.00 | $20,000.00 |
| **Subchapter V Trustee Fees** | $1,000.00 | $1,000.00 | $1,000.00 |
| **Class 1** | $0.00 | $0.00 | $0.00 |
| **Class 2** | $0.00 | $0.00 | $0.00 |
| **Class 3** | $0.00 | $0.00 | $0.00 |
| **Class 4** | $0.00 | $0.00 | $0.00 |
| **Class 5** | $0.00 | $0.00 | $0.00 |
| **Class 6** | $0.00 | $0.00 | $0.00 |
| **Class 7** | $0.00 | $0.00 | $0.00 |
| **Non-Trustee Administrative Obligations** | $5,000.00 | $5,000.00 | $5,000.00 |
| **Equity** | $0.00 | $0.00 | $0.00 |
| | | | |
| **Total Debits** | $26,000.00 | $26,000.00 | $26,000.00 |
| | | | |
| **Beginning Balance** | $6,134,553.78 | $6,108,553.78 | $6,082,553.78 |
| **Ending Balance** | $6,108,553.78 | $6,082,553.78 | $6,056,553.78 |

|                                              | December 2024     |
| -------------------------------------------- | ----------------- |
| **REVENUE**                                  |                   |
| **Proceeds of Asset Sale**                   | $0.00             |
| **Collection of Accounts Receivable**        | $14,000,000.00    |
| **Collection of Work in Progress**           | $0.00             |
|                                              |                   |
| **Total Credits**                            | $14,000,000.00    |
|                                              |                   |
| **DISTRBUTIONS**                             |                   |
| **Payroll**                                  | $20,000.00        |
| **Subchapter V Trustee Fees**                | $1,000.00         |
| **Class 1**                                  | $0.00             |
| **Class 2**                                  | $0.00             |
| **Class 3**                                  | $0.00             |
| **Class 4**                                  | $0.00             |
| **Class 5**                                  | $0.00             |
| **Class 6**                                  | $0.00             |
| **Class 7**                                  | $0.00             |
| **Non-Trustee Administrative Obligations**   | $5,000.00         |
| **Equity**                                   | $20,030,553.78    |
|                                              |                   |
| **Total Debits**                             | $20,056,553.78    |
|                                              |                   |
| **Beginning Balance**                        | $6,056,553.78     |
| **Ending Balance**                           | $0.00             |

Exhibit 3

Class 1

| Creditor | Claim Number | Unobjected Claim Sum |
|---|---|---|
| Internal Revenue Service | 13 | $1,634.24 |
| Massachusetts Department of Revenue | 32 | $10,638.12 |
| Virginia Unemployment | n/a | $1,656.00 |
| DC Department of Employment | n/a | $3,165.00 |

Total Allowed Claims                                                $17,093.36

Class 2

| Creditor | Claim Number | Claims Register Sum | Unobjected Claim Sum |
|---|---|---|---|
| Tetyana Stone | 3 | $6,341.69 | $6,341.69 |
| Timothy Penamon | 5 | $2,250.00 | $2,250.00 |
| Michael Diaz | 6 | $5,612.41 | $5,612.41 |
| Joseph Tucker de St. Aubin | 7 | $4,198.53 | $4,198.53 |
| Chenxi Xu | 8 | $2,000.00 | $2,000.00 |
| Jacob Alexander Hall | 9 | $2,656.25 | $2,656.25 |
| Dylan Cooper | 10 | $2,187.50 | $2,187.50 |
| Hannah Read | 11 | $2,031.25 | $2,031.25 |
| Amina Salad | 12 | $2,187.50 | $2,187.50 |
| Kristine Marie R. Garcia | 14 | $3,468.75 | $3,468.75 |
| Alyah Gilberry | 15 | $3,423.13 | $3,423.13 |
| Bryon O. Elwell Jr. | 16 | $8,841.70 | $8,841.70 |
| Joel Benjamin Thomas | 17 | $2,406.25 | $2,406.25 |
| Yasmine J. Kuttab | 18 | $8,580.33 | $8,580.33 |
| George Reyes | 19 | $2,812.50 | $2,812.50 |
| Mark DeVito | 20 | $2,656.25 | $2,656.25 |
| Iman Jawad | 21 | $3,531.13 | $3,531.13 |
| Phillip Headen | 22 | $2,156.25 | $2,156.25 |
| Anthony J Lizza | 24 | $10,553.84 | $4,218.75 |
| Nazanin Sobat | 25 | $2,341.60 | $2,341.60 |
| Babysiva Karpuram | 26 | $2,250.00 | $2,250.00 |
| Kyle Shut | 27 & 31 | $3,962.00 | $2,087.00 |
| Simon Akula | 28 | $1,718.75 | $1,718.75 |
| Robbie Auchter | 29 | $3,113.67 | $3,113.67 |
| Lauren Egan | 30 | $4,531.25 | $4,531.25 |
| Oluwasinmi Oyetunde | 33 | $17,742.33 | $4,580.33 |
| Caroline Aposporos | 36 | $6,394.97 | $6,394.97 |
| Oliver Mendelin | 37 | $2,233.67 | $2,233.67 |
| Jesse Berman | 38 | $2,875.00 | $2,875.00 |
| Matthew Gross | 40 | $3,113.67 | $3,113.67 |
| Julian Valle Garcia | 43 | $2,527.00 | $2,527.00 |
| Max Hall | 44 | $1,875.00 | $1,875.00 |
| Omer Tarik Yaylagul | 45 | $2,659.00 | $2,659.00 |
| Molly Hernandez | 46 | $3,440.58 | $3,440.58 |
| Carma Khatib | 47 & 48 | $9,100.00 | $3,100.00 |
| Evgueni Gavrilov | 49 | $9,333.40 | $4,233.00 |
| Leonor Alfonso | 50 | $22,353.21 | $22,353.21 |
| Adam Levin | n/a | $2,380.33 | $2,380.33 |
| Casey Paul | n/a | $2,204.33 | $2,204.33 |
| Chum Chancharadeth | n/a | $1,353.66 | $0.00 |
| John Anderson | n/a | $4,287.00 | $4,287.00 |
| Julio Tamariz | n/a | $3,172.33 | $3,172.33 |
| Mitchell Romano | n/a | $2,087.00 | $2,087.00 |
| River Albo | n/a | $2,233.67 | $2,233.67 |
| Skylar Evans | n/a | $2,849.67 | $2,849.67 |

| | | | |
|---|---|---|---|
| Total Allowed Claims | | | $166,202.20 |

Class 3

| Creditor | Claim Number | Unobjected Claim Sum |
|---|---|---|
| BMW Financial Services NA, LLC | 1 | $27,398.84 |
| | | |
| Total Allowed Claims | | $27,398.84 |

Class 4

| Creditor | Claim Number | Claims Register Sum | Unobjected Claim Sum |
|---|---|---|---|
| Wells Fargo Bank, N.A. | 54 | $533,704.13 | $533,704.13 |
| | | | |
| Total Allowed Claims | | | $533,704.13 |

Class 5

| Creditor | Claim Number | Claims Register Sum | Unobjected Claim Sum |
|---|---|---|---|
| TMG 1400 L Street, L.L.C. | 51 | $7,696,881.94 | $0.00 |
| | | | |
| Total Allowed Claims | | | $0.00 |

Class 6

| Creditor | Claim Number | Claims Register Sum | Unobjected Claim Sum |
|---|---|---|---|
| ADI Construction of Virginia, LLC | 53 | $5,020,524.48 | $4,489,996.29 |
| Advanced Network Consulting, Inc | 39 | $300,000.00 | $300,000.00 |
| Alliantgroup LP | n/a | $0.00 | $25,125.00 |
| Anthony Watkins | n/a | $0.00 | $30,000.00 |
| Artwoom | n/a | $0.00 | $7,000.00 |
| C T Corporation System | n/a | $0.00 | $841.00 |
| Citibank | n/a | $0.00 | $100,381.65 |
| Clinton & Peed | n/a | $0.00 | $4,208.69 |
| CST Group, CPAs | 35 | $13,735.29 | $8,920.00 |
| District Advisory, LLC | 34 | $11,063.75 | $8,810.00 |
| Flow LLC | n/a | $0.00 | $4,304.64 |
| FTI Consulting, Inc. | 42 | $113,459.20 | $113,459.20 |
| Go 360 Cloud | 57 | $90,800.00 | $90,800.00 |
| Go 360 Cloud Private Limited | 56 | $1,209,230.00 | $1,039,625.00 |
| HCL GLobal Systems Inc. | 55 | $93,730.00 | $73,839.00 |
| JPMorgan Chase Bank, N.A. | 2 | $124,809.52 | $124,809.52 |
| Nalex Technology Solutions | 4 | $50,000.00 | $20,000.00 |
| Navitas Business Consulting | n/a | $0.00 | $65,880.00 |
| Office of Bruce C. Bereano | 23 | $15,000.00 | $5,236.00 |
| Polka Dot Sky Software | n/a | $0.00 | $196,360.00 |
| Potomac Integration & Consulting, LLC | n/a | $0.00 | $52,800.00 |
| Productboard, Inc. | n/a | $0.00 | $8,000.00 |
| Saovaluck Lim | n/a | $0.00 | $340,000.00 |
| Svitlana Kushnir | n/a | $0.00 | $240,000.00 |
| Thida Hassan | n/a | $0.00 | $1,400.00 |
| Vanta | n/a | $0.00 | $9,625.00 |
| Vire Consulting | n/a | $0.00 | $250,000.00 |
| Vlad Enache | 52 | $121,400.00 | $86,282.00 |
| Yulishana | n/a | $0.00 | $10,000.00 |

Total Allowed Claims:                                                          $7,707,702.99

Class 7

| Creditor | Claim Number | Claims Register Sum | Unobjected Claim Sum |
|---|---|---|---|
| The State of Maryland | 59 | $2,507,986.00 | $0.00 |