Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Enovational Corp.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 22-55-ELG |
| ENOVATIONAL CORP. | (Chapter 11) |
|     Debtor. | |
| _____/ | |
| ENOVATIONAL CORP. | Adversary Proceeding No. 22-10014-ELG |
|     Plaintiff, | |
| v. | |
| THE STATE OF MARYLAND | |
|     Defendant. | |

**MOTION TO ABANDON OR DESTROY BOOKS AND RECORDS**

Comes now Enovational Corp. ("Enovational" or the "Reorganized Debtor"), by and through undersigned counsel, and moves this Honorable Court for leave to abandon or destroy all books and records in the possession of Enovational, and in support thereof states as follows:

**I.  Introduction**

When Enovational confirmed its first amended plan of reorganization (the "Plan") on October 12, 2022, DE #255, the Reorganized Debtor provided for a course of dealings that would set aside close to $1 million for post-confirmation operations through the course of litigation with the State of Maryland (the "Maryland Litigation"). The funds, in turn, were intended to cover (i)

1

retention of the Reorganized Debtor's chief executive (whose work would be needed through the close of litigation, so as to assist with litigation and allow for the presence of a critical corporate designee at all times); (ii) storage and maintenance fees for the retention of books and records; and (iii) the payment of professionals (including the Subchapter V trustee, reorganization/litigation counsel, and special counsel). Cash flow projections contemplated trial of the Maryland Litigation would occur in or about August 2023, DE #168 at p. 23, with a recovery thereof being occasioned in or about December 2024, *id.* at p. 28.

Unfortunately, the Maryland Litigation has taken longer than originally anticipated. And while professional fees have generally stayed under the budgeted allotment of $10k per month for pre-trial months, the expenses of retaining the Reorganized Debtor's chief executive ("Mr. Enache"), and preserving books and records, have now exceeded the reserves earmarked by Enovational and the Subchapter V trustee. With the residue of funds having been distributed to creditors (it is believed close to 70% of all claims have been paid in full), the Reorganized Debtor's bank account presently holds only *de minimis* monies and the Subchapter V trustee's account is believed to hold less than $250,000.00.

Mr. Enache has ceased receiving compensation and will work, for the duration of this case, cognizant of such allowing him an administrative expense claim to be paid once the Maryland Litigation concludes. But Enovational, if not rid of the burden of maintaining books and records, will be generally without the funds requisite to pay third party custodians. And it is thusly appropriate to now relieve the Reorganized Debtor of this obligation.

II.     **Argument: Books and Records Can Be Destroyed**

At bottom, the only forward-looking utility to maintaining books and records is litigation-centric. Enovational has already produced some 6,024 pages of records to the State of Maryland

and the Old Line State, in turn, has produced approximately 7,289 pages of records to Enovational. It is strongly suspected that these are the records on which the parties will rely when taking the Maryland Litigation to trial (should the case not first be resolved through summary judgment). Critically, however, Enovational has taken one additional step to ensure the State of Maryland have access to everything it may desire in connection with the pending litigation: offering unfettered access to *all* of Enovational's records.

To be clear, the Reorganized Debtor has previously offered—and, through service of this motion, renews its offer—to furnish the State of Maryland with absolute access to *all* of Enovational's records, as kept in their native form in the ordinary course of business, provided only that the state agree to not intentionally read or use, for litigation purposes, any e-mails between Enovational and its litigation counsel. The Reorganized Debtor does not object to the State of Maryland seeing and reviewing pre-petition privileged e-mails (provided such not be construed as a waiver of the attorney/client privilege). Nor does the Reorganized Debtor object to the State of Maryland seeing post-petition e-mails with litigation counsel, so long as review thereof ceases once there is a cognizance of the nature of the communication and further provided those e-mails are not actively mined for litigation strategy or used in litigation.

The State of Maryland has declined this offer previously. It is expected (though not definitively known) the state will again decline this offer now. Whether such is because Maryland knows it does not need access to records beyond those that have already been produced (alongside those held by the state itself), because Maryland does not wish to pay to review these records, or otherwise, is immaterial: the offer has been made and is, herein, again made. The state is free to inspect *all* of Enovational's records, "as they are kept in the usual course of business," Fed. R. Civ.

3

P. 34(b)(2)(E)(i), provided only that privileged records not be cognizantly reviewed by counsel (or paraprofessionals) or used against Enovational in the litigation.[1]

Outside of the Maryland Litigation, these books and records serve no ongoing use or purpose. Enovational has sold functionally all non-litigation assets to a third party, DE #234, and is no longer carrying on any business aside from pursuit of the Maryland Litigation. The Reorganized Debtor presently exists solely to collect the approximately $18 million owed it by Maryland, with ambitions of using a recovery to complete payments to creditors and disburse remaining funds—after satisfying post-confirmation administrative claims—to equity, as contemplated by the Reorganized Debtor's confirmed plan. *See* DE #255; DE #362.

Stated otherwise: absolutely no harm will befall any party if Enovational destroys its books and records. Maryland has been provided the records the Reorganized Debtor believes relevant and responsive to discovery requests. The state has also been offered—and is herein, once more, offered—complete access to *all* of the at-issue records. No other party has any interest in these records or their contents. And there is no other utility in maintaining these records. *See Coastal Capital, LLC v. Savage,* 2025 U.S. Dist. LEXIS 25869, *18-*19 (D. N.H. 2025) (discussing a trustee's leave to destroy records while litigation is still ongoing).

---

[1] Lest the obvious go unnoticed: Enovational is not concerned about the state viewing attorney/client communications because there does not exist any material that would be detrimental to Enovational's litigation claims, nor is there any material of a sensitive or embarrassing nature. Enovational does not want to see privileged communications concerning litigation strategy show up in evidence, but is also aware that the subject communications, even if partially viewed by Maryland before counsel recognizes the need to stop reading, are thoroughly innocuous in nature. There are, however, privileged communications concerning a sensitive claim—unrelated to the Maryland Litigation—that was previously addressed, under seal, in this case. *See* DE #68. The Reorganized Debtor is obviously desirous to ensure communications concerning that claim not ever be made public. There are also hundreds of pages of records containing the personally identifiable information of medical marijuana users in the State of Maryland; since the state presumably already has access to data about its own marijuana users, the Reorganized Debtor is unconcerned with disclosure of this information.

Conversely, palpable harm will befall Enovational if these records are not abandoned and destroyed. The Reorganized Debtor can no longer afford to pay hefty storage fees for data and information (bearing in mind Enovational was a technology company, the data is voluminous and the fees are correlatively extensive). There simply does not remain the money to do so. *See* 11 U.S.C. § 554(a) (permitting a trustee to abandon property of an estate where such "is burdensome to the estate. . .").[2]

As intimated above, Enovational's chief executive—and sole remaining employee—has already forgone his ongoing collection of payment from the Reorganized Debtor, aware that funds no longer exist to pay his wages. And Enovational's operating account has been run down to less than $20,000.00, a relatively *de minimis* sum.

The Subchapter V trustee is holding a sum of money believed to be between $200k and $250k. These funds, however, have long been earmarked for the payment of professionals through the close of the Maryland Litigation. These monies may very well prove insufficient to even make those payments (depending on how summary judgment rulings ultimately fall, it is conceivable the Maryland Litigation will result in a trial of 30-45 days in duration which, in turn, would likely invite professional fees of at least $225k for trial attendance alone, with significantly more going into trial preparation).[3]

---

[2] Section 554 is simply cited and argued for purposes of analogy. The at-issue records vested in the Reorganized Debtor, and exited the estate, upon confirmation of Enovational's plan of reorganization. *See* DE #168 at § 10 (delineating those assets that do *not* vest in the Reorganized Debtor upon plan confirmation).

[3] These numbers are modest and assume (i) undersigned counsel tries the case alone, without any help from special counsel and without co-counsel; (ii) undersigned counsel continues to honor his hourly rate from four years ago, for the duration of this case, despite that rate being well below his current hourly rate; (iii) no out-of-pocket expenses are involved in trial; and (iv) the Subchapter V trustee does not attend trial.

At bottom, the Reorganized Debtor has run out of money to store and retain records. Professionals are prepared to move forward with a likely-insufficient cash reserve, and Mr. Enache has already ceased collecting his wages. There is simply nothing else left to cut. And it is accordingly appropriate—especially in light of the Debtor's lack of intent to rely on any records not already produced, in the Maryland Litigation, and the repeated offer of *carte blanche* inspection set forth herein—to now permit Enovational to cease accruing storage fees and to abandon or destroy all such records.

### III. Conclusion

WHEREFORE, Enovational respectfully prays this Honorable Court (i) permit the abandonment or destruction of all books and records; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: December 26, 2025     By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Reorganized Debtor*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of December, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

.

/s/ Maurice B. VerStandig
Maurice B. VerStandig